PERVEZ & REHMAN, P.C.
Nadia M. Pervez (NP-5388)
Aneeba Rehman (AR-6404)
68 South Service Road, Suite 100
Melville, New York 11747
631.427.0700
Attorneys for the Plaintiff

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CARINA GALLARDO,

                  PLAINTIFF,           **Docket No.:**

          - against -                            **VERIFIED**
                                                              **COMPLAINT**

IEH CORPORATION, WILLIAM CRAIG &
KARI GRAHAM

                  DEFENDANTS,

------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1. This matter arises after Defendants terminated Plaintiff after Plaintiff took protected leave under The Families First Coronavirus Response Act, 116 P.L. 127, § 5101 et seq., 134 Stat. 178 (hereinafter "FFCRA"), to recover for violations of the New York State Human Rights Law, Executive Law § 296 et. seq. (hereinafter "NYSHRL") for wrongfully discriminating and retaliating against Plaintiff based on gender and for requesting reasonable accommodations, and to recover for Defendant's violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), by failing to provide her with a COBRA notice that complies with the law.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this controversy because it raises a federal question pursuant to 28 U.S.C. § 1331, § 1132(e) and (f), and § 1355. The Court also has supplemental jurisdiction over PLAINTIFF's state law claims pursuant to 28 U.S.C. § 1367.

3. Venue is proper in the Eastern District pursuant to 28 U.S.C. § 1391 because the conduct making up the basis of the Complaint took place in this judicial district. Additionally, ERISA § 502(e)(2) provides that venue is proper "where the plan is administered, where the breach too place, or where defendant resides or may be found" 29 U.S.C. § 1132(e)(2).

## PARTIES

4. *Carina Gallardo ("Ms. Gallardo" or "Plaintiff") is a resident of Kings County.*

5. IEH Corporation ("IEH" or "Corporate Defendant") is a domestic business corporation organized and existing under the laws of the State of New York, with a principal place of business at 140 58th Street, Building B, Suite 8F, Brooklyn, NY 11220.

6. Defendant William Craig ("Mr. Craig") is the Chief Financial Officer ("CFO") of IEH, and Plaintiff's supervisor.

7. Defendant Kari Graham ("Ms. Graham") is the Controller for IEH, and Plaintiff's supervisor.

## NON-PARTIES

8. Laura Fisch ("Ms. Fisch") is a Senior Accountant employed by IEH.

9. Alexa Maldonado ("Ms. Maldonado") is a Human Resources Representative employed by IEH.

## STATEMENT OF FACTS

### Gender Discrimination
*First Confrontation*

10. Ms. Gallardo was hired by IEH as an Accounting Clerk on or about June 5, 2017.

11. As an Accounting Clerk, Ms. Gallardo was assigned the following job duties: to handle the Accounts Receivable cycle, included billing, cash application, collections, resolve account discrepancies, and any other items involving the incoming cash for the company.

12. On or about October 16, 2020, Ms. Gallardo went to Mr. Craig's office at his request to review a note regarding the status of an account (hereinafter "Account X") on which Ms. Gallardo worked.

13. During this meeting, Mr. Craig discussed the history of Account X with Plaintiff.

14. In or around August 2020, concerning Account X, Mr. Craig instructed Ms. Gallardo to stop pulling funds from that account and not send the client (hereinafter "Client Y") any of the normal paperwork and to put that account on hold.

15. The Vice President of Client Y stated the IEH owed Client Y $4 million. The Vice President questioned Mr. Craig about the open balances and plans for payment to bring the account current.

16. Mr. Craig asked the Vice President to give him a break because another unnamed employee of IEH, also a single mother, was diagnosed with COVID-19 and because he worked with "single mothers."

17. Ms. Gallardo is a woman who is separated from her husband and effectively a single mother who cares for a minor child.

18. On October 20, 2020, following the meeting with Mr. Craig, Ms. Gallardo emailed Ms. Maldonado of the Human Resources Department ("HR") to advise that the "single mother" comment made Ms. Gallardo uncomfortable. Ms. Gallardo felt uncomfortable because Mr. Craig's unconscious bias made him view the unnamed employee, including Ms. Gallardo, as inadequate employees because they are women and single mothers.

19. At the very least, this discriminatory and insensitive remark demonstrates that Mr. Craig believes any alleged failure to perform job duties was on account of an employee's status as a woman and single mother.

20. In an email to Ms. Maldonado to Human Resources on October 20, 2020, Ms. Gallardo complained about the discriminatory language used by Mr. Craig in the meeting.

21. Ms. Gallardo requested formal training for all management concerning proper office etiquette and unconscious bias regarding gender and different family structures.

22. Ms. Gallardo's complaints went ignored and instead of remedying the situation, resulted in retaliation.

*Second Confrontation*

23. On or about December 9, 2020, Ms. Gallardo spoke with the new Controller of IEH, Ms. Graham.

24. The phone call covered three topics.

25. First, Ms. Graham instructed Ms. Gallardo not to enter or process any incoming payments (i.e., wires or checks) until Ms. Graham physically comes into the office to input them into the system.

26. Ms. Gallardo expressed her understanding that Ms. Graham, as a newer employee, was still trying to understand all of the procedures at IEH. To assist Ms. Graham and keep the process running smoothly, Ms. Gallardo emailed Ms. Graham with detailed step-by-step instructions—with corresponding screenshots—of how payments are processed.

27. Ms. Graham ignored Ms. Gallardo's concerns that work would begin to pile up if they waited for Ms. Graham's physical presence in the office to enter the payments, a task that Ms. Gallardo was successfully performing.

28. Despite the concern, Ms. Graham demanded the work cease until she is present.

29. Second, Ms. Graham told Ms. Gallardo that she was to report directly to Ms. Graham, and then Ms. Graham would report to Mr. Craig, the CFO.

30. This new reporting structure directly contradicted what Mr. Craig had told Ms. Gallardo and the previous reporting structure and no one had informed Ms. Gallardo that anything had changed.

31. Third, at the end of the call, Ms. Graham threatened Ms. Gallardo by saying that Ms. Gallardo would "not be around much longer" if she did not understand how "things work."

32. On December 9, 2020, after the phone call with Ms. Graham, Ms. Gallardo sent two internal emails.

33. First, Ms. Gallardo sent an email to Ms. Graham. The email: (1) asked Ms. Graham to confirm she did not want Ms. Gallardo to process any incoming payments until Ms. Graham is in the office—despite the fact work would continue to compound; (2) confirmed for Ms. Graham that no one had informed Ms. Gallardo that she was to report to Ms. Graham instead of Mr. Craig; (3) expressed her concern with Ms. Graham's tone and perceived threat to Ms. Gallardo's continued employment; and (4) asked to schedule a

meeting with Ms. Graham in the office to discuss Ms. Graham's tone and the perceived threat.

34. Second, Ms. Gallardo sent an email to Ms. Maldonado at HR. The email discussed the following: (1) what transpired on the phone call with Ms. Graham; (2) that, while Ms. Gallardo did not understand what made Ms. Graham so angry and threaten her employment, Ms. Gallardo felt it was unprofessional and inappropriate and no one in a management position should speak in that manner to a "subordinate"; (3) that, because Ms. Gallardo was scheduled to take PTO days soon, Ms. Gallardo wanted to make sure her work is entered and wants to keep entering information so it does not get backlogged; (4) Ms. Gallardo requested Ms. Graham contact her only in person, at her desk, or on her desk phone, as opposed to her cellphone, because Ms. Gallardo considered what Ms. Graham had said as a threat to her job and livelihood; and (5) that Ms. Gallardo felt uncomfortable and threatened; she requested that she be advised on how to do her job properly, but had never been told she had even done it incorrectly or poorly.

### *Third Confrontation*

35. On December 9, 2020, Ms. Gallardo spoke to Mr. Craig about how Ms. Graham had threatened Ms. Gallardo's employment because of a disagreement.

36. In response, Mr. Craig reprimanded Ms. Gallardo.

37. Mr. Craig told Ms. Gallardo that she was being dramatic and that he cannot control how someone speaks to her.

38. Demeaning her further, Mr. Craig told Ms. Gallardo that she would have to "put her big boy pants on" if she wanted to work at IEH.

39. Mr. Craig told Ms. Gallardo that he runs IEH and if she did not like how someone spoke to her, then she should go to school, get her CPA license, and be her own boss.

40. Then, Mr. Craig changed his tone and asked Ms. Gallardo whether she thought she was getting a good start with her new boss.

41. Ms. Gallardo explained that no one told her there was an issue, Ms. Gallardo did not think there was an issue, and explained that she did not understand why there was hostility towards her.

42. In response, Mr. Craig stated that Ms. Gallardo and the other employee who is also a single mother had been allowed to do whatever they wanted and that they had a good situation going at IEH.

43. Mr. Craig also stated that "this would not be happening if you weren't taking your PTOs."

44. Mr. Craig singled Ms. Gallardo out. Mr. Craig placed all the blame on Ms. Gallardo even while many of Ms. Gallardo's coworkers worked remotely or would work hybrid schedules.

45. Similar to the comment Ms. Graham had made earlier that day, Ms. Gallardo understood Mr. Craig's comment to be a threat.

46. Craig exercised his authority by using Ms. Gallardo's status as single mothers before. Now, Ms. Gallardo understood that he required Ms. Gallardo either to quietly endure any abuse or risk being an unemployed single mother during a pandemic.

47. Ms. Graham clearly was retaliating against Ms. Gallardo after she made a good-faith complaint to HR. Rather than investigate Ms. Gallardo's complaints, IEH stripped Ms. Gallardo of her job duties and reporting structure.

48. Shockingly, IEH's overt retaliation and the threats made to Ms. Gallardo that her time as an employee was limited were not only intentional, but clearly IEH made no efforts to disguise their unlawful behavior.

49. On December 9, 2020, after the meeting with Mr. Craig, Ms. Gallardo sent Ms. Maldonado at HR an email reiterating what occurred during the meeting with Mr. Craig and to go on record to say that Ms. Gallardo felt targeted.

*FMLA and FFCRA*

50. In March of 2020, schools closed because of COVID-19.

51. Ms. Gallardo asked the President of IEH, Mr. David Offerman, whether she could work remotely from home. He approved the request.

52. When Ms. Gallardo later confirmed that she was working remotely, Mr. Craig stated that "someone of [Ms. Gallardo's] title should not be working remotely and should be in the office."

53. Ultimately, Ms. Gallardo felt it necessary to take leave because of Mr. Craig's constant negative comments about Ms. Gallardo working remotely.

54. On or December 23, 2020, Ms. Gallardo requested FMLA leave to care for her child who did not have a school to attend, due to the COVID-19 pandemic.

55. On or about December 27, 2020, Ms. Gallardo received a letter from IEH HR that stating, in relevant part, the following: (1) Ms. Gallardo's request for leave under the FMLA had been denied because unavailability of childcare is not covered under the FMLA; (2) Ms. Gallardo is covered under the FFCRA; (3) Ms. Gallardo would be required to return to work on March 17, 2021 because her leave started on December 23, 2020; (4) "however, in the company's sole discretion, [Ms. Gallardo] [is] scheduled to return to work on April

1, 2021"; (5) failure to return to work on April 1, 2021, will be considered a voluntary resignation and Ms. Gallardo will be terminated.

56. Based on this letter, Ms. Gallardo took her lawfully entitled and approved leave under the FFCRA.

57. On March 17, 2021, Ms. Gallardo emailed Ms. Maldonado for the following reasons: (1) to confirm that she was to return to work on April 1, 2021; (2) to ask whether the President of IEH had approved Mr. Craig's demand that Ms. Gallardo no longer work remotely; (3) to inquire as to whether Ms. Gallardo's complaints of harassment, intimidation, and hostile statements had been investigated, and, if so, as to the outcomes of those investigations.

58. On March 29, 2021, Ms. Gallardo received a letter from IEH that stated, in relevant part that Ms. Gallardo position with IEH had been eliminated because the functions Ms. Gallardo performs can be performed on an automated basis and otherwise internally within IEH.

59. IEH terminated Ms. Gallardo at the same time IEH was opening a new location for business.

60. After IEH terminated Ms. Gallardo, IEH hired a senior Accountant, which expanded the accounting department.

61. IEH unlawfully terminated Ms. Gallardo while she was on protected leave, and in retaliation for her good-faith complaints of discrimination and harassment.

62. Ms. Gallardo's request to take protected leave was directly related to her status as a women, single mother and sole caregiver of her minor child.

63. IEH made very clear that it disfavored single mothers and felt they were not entitled to benefits and protections afforded to other employees who are not similarly situated.

**ERISA Violations**

64. Furthermore, Plaintiff is a former employee of Defendant and was covered based on her health plan through the Defendant.

65. Plaintiff was a participant/beneficiary in the Plan before her termination which constituted a qualifying event within the meaning of 29 U.S.C. § 1163(2), rendering her a qualified beneficiary of the Plan pursuant to 29 U.S.C. § 1167(3). Importantly, Ms. Gallardo was not terminated for gross misconduct.

66. Defendant employed more than 20 employees who were members of the Plan during the relevant time period. Defendant is the Plan sponsor within the meaning of 29 U.S.C. § 1002(16)(B), and the administrator of the Plan within the meaning of 29 U.S.C. § 1002(16)(A). The Plan provides medical benefits to employees and their beneficiaries and is an employee welfare benefit plan within the meaning of 29 U.S.C. §1002(1) and a group health plan within the meaning of 29 U.S.C. § 1167(1).

67. The COBRA amendments to ERISA included certain provisions related to continuation of health coverage upon termination of employment or another "qualifying event" as defined by statute.

68. Among other things, COBRA requires the plan sponsor of each group health plan normally employing more than 20 employees on a typical business day during the preceding year to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event… to elect, within the election period, continuation coverage under the plan." 29 U.S.C. § 1161. (Emphasis added).

69. Notice is of enormous importance. The COBRA notification requirement exists because employees are not expected to know instinctively of their right to continue their health coverage.

70. To facilitate compliance with these notice obligations, the United States Department of Labor ("DOL") has issued a Model COBRA Continuation Coverage Election Notice ("Model Notice"), which is included in the Appendix to 29 C.F.R. § 2590.606-4. The DOL website states that the DOL "will consider use of the model election notice, appropriately completed, good faith compliance with the election notice content requirements of COBRA."

71. In the event that a plan administrator declines to use the Model Notice and fails to meet the notice requirements of 29 U.S.C. § 1166 and 29 C.F.R. § 2590.606-4, the administrator is subject to statutory penalties of up to $110 per participant or beneficiary per day from the date of such failure. 29 U.S.C. § 1132(c)(1). In addition, the Court may order such other relief as it deems proper, including but not limited to injunctive relief pursuant to 29 U.S.C. § 1132(a)(3) and payment of attorneys' fees and expenses pursuant to 29 U.S.C. § 1132(g)(1).

72. Such is the case here. Defendant failed to meet the notice requirements by failing to apprise Plaintiff of her right to elect continuation of health benefits upon her termination.

*Emotional Distress*

73. Furthermore, Mr. Craig and Ms. Graham caused Ms. Gallardo significant stress and anxiety because of the threats they made to her employment.

74. Ms. Gallardo sought treatment to address her anxiety and emotional distress

75. Ms. Gallardo feels targeted for taking PTO days and for asking questions about the job for which she was hired.

## STATEMENT OF CLAIM

### COUNT I
### VIOLATION OF THE EMERGENCY PAID SICK LEAVE ACT

76. Plaintiff hereby repeats and realleges each and every allegation of the preceding paragraphs with the same force and effect as though set forth fully herein.

77. Defendant employed fewer than 500 employees at its Brooklyn location.

78. Ms. Gallardo worked for Defendant for more than thirty (30) days.

79. Ms. Gallardo was an individual who needed to take leave under the FFRCA because childcare was not available through her child's school or childcare provider.

80. While Ms. Gallardo was afforded this leave, she was not afforded job protection and was terminated while on leave.

81. Defendants' violation of the FFRCA was willful and knowingly committed.

82. As a direct and proximate result of Defendants' violation of the FFRCA, Ms. Gallardo was injured and suffered damages.

### COUNT 2
### RETALIATION IN VIOLATION OF THE EMERGENCY PAID SICK LEAVE ACT

83. Plaintiff hereby repeats and realleges each and every allegation of the preceding paragraphs with the same force and effect as though set forth fully herein.

84. Defendant terminated Ms. Gallardo because of her absence from work to care for her child who did not childcare through school or a childcare provider.

85. Defendants' violation of the FFRCA was willful and knowingly committed.

86. As a direct and proximate result of Defendants willful violation, Ms. Gallardo was injured and suffered damages.

87. For the reasons set forth above, the Defendants are liable to Plaintiff for an unlawful discharge in violation of public policy.

88. For the reasons set forth above, Defendants are liable to Plaintiff for interference under the FMLA.

## COUNT 3

### SEX DISCRIMINATION UNDER THE NYSHRL

89. Plaintiff hereby repeats and realleges each and every allegation of the preceding paragraphs with the same force and effect as though set forth fully herein.

90. Pursuant to the NYSHRL, it is unlawful for and employer, "because of an individual's...sex... familial status, marital status...to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate." NYSHRL Sec. 296(1)(a).

91. Further, it is a violation of NYSHRL for an "employer... to subject any individual to harassment because of an individual's... sex...familial status, marital status...or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint...regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories." NYSHRL Sec. 296(1)(h).

92. Defendants knew that Plaintiff was a woman.

93. Defendants engaged in an unlawful discriminatory practice by treating Plaintiff less well because she was a woman.

## COUNT 4

## FAMILIAL STATUS DISCRIMINATION UNDER THE NYSHRL

94. Plaintiff hereby repeats and realleges each and every allegation of the preceding paragraphs with the same force and effect as though set forth fully herein.

95. Pursuant to the NYSHRL, it is unlawful for and employer, "because of an individual's…sex… familial status, marital status…to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate." NYSHRL Sec. 296(1)(a).

96. Further, it is a violation of NYSHRL for an "employer… to subject any individual to harassment because of an individual's… sex…familial status, marital status…or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint…regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories." NYSHRL Sec. 296(1)(h).

97. Defendants knew that Plaintiff was a mother.

98. Defendants engaged in an unlawful discriminatory practice by treating Plaintiff less well because she was a mother.

99. Defendants' actions were taken in conscious disregard of Plaintiff's rights and violate the NYSHRL.

## COUNT 5

### MARITAL STATUS DISCRIMINATION UNDER THE NYSHRL

100. Plaintiff hereby repeats and realleges each and every allegation of the preceding paragraphs with the same force and effect as though set forth fully herein.

101. Pursuant to the NYSHRL, it is unlawful for and employer, "because of an individual's...sex... familial status, marital status...to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate." NYSHRL Sec. 296(1)(a).

102. Further, it is a violation of NYSHRL for an "employer... to subject any individual to harassment because of an individual's... sex...familial status, marital status...or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint...regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories." NYSHRL Sec. 296(1)(h).

103. Defendants knew that Plaintiff was an married but separated single mother.

104. Defendants engaged in an unlawful discriminatory practice by treating Plaintiff less well because she was an unmarried single mother.

## COUNT 6

### RETALIATION UNDER THE NYSHRL

105. Plaintiff hereby repeats and realleges each and every allegation of the preceding paragraphs with the same force and effect as though set forth fully herein.

106. Pursuant to NYSHRL Executive Law Sec. 296(7), it "shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint…"

107. Plaintiff engaged in protected activity under the NYSHRL by making a good faith complaint.

108. Defendants were aware of Plaintiff's complaints and her status as a woman and unmarried, single mother.

109. Defendants took adverse employment actions against Plaintiff because she complained about the discriminatory conduct towards here.

110. Defendants' conduct was done in conscious disregard for Plaintiff's rights.

111. By the foregoing reasons, Defendant is liable to Plaintiff in an amount to be determined at trial, for all damages permitted under the law, including but not limited to compensatory damages, punitive damages, back pay, front pay, interest attorneys' fees and costs.

### COUNT 7

### VIOLATION OF NOTICE REQUIREMENT UNDER COBRA, NY INS §3221(m), NY LL §195(b)

112. Plaintiff hereby repeats and realleges each and every allegation of the preceding paragraphs with the same force and effect as though set forth fully herein.

113. Pursuant to 29 U.S.C. §1166(a), an employer must notify "in the case of a qualifying event described in paragraph (1), (2), (4), or (6) of section 1163 of this title, any qualified beneficiary with respect to such event,"

114. A "qualifying event" under 29 U.S.C. §1163 includes "[t]he termination (other than by reason of such employee's gross misconduct), or reduction of hours, of the covered employee's employment." Plaintiff's termination is a qualifying event.

115. Pursuant to NYLL §195(b), an employer must provide notice of termination of Plaintiff's healthcare benefits.

116. Pursuant to NY Ins §3221(m), "a group contract issued by a hospital service, health service or medical expense indemnity corporation shall provide that if all or any portion of the insurance on an employee or member insured under the policy ceases because of termination of employment or membership in the class or classes eligible for coverage under the policy, such employee or member shall be entitled without evidence of insurability upon application to continue his insurance for himself or herself and his or her eligible dependents."

117. The Plan is a group health plan within the meaning of 29 U.S.C. §1167(1) and NY Ins §3221(m).

118. Defendant is the plan sponsor and the plan administrator and was subject to the continuation of coverage and notice requirements of COBRA and NY Ins §4305.

119. Defendant violated 29 U.S.C. §1167(1), and NYLL §195(b), and NY Ins §§3221(m) by failing to give proper notice to Plaintiff of her right to continue her health plan coverage.

120. These violations are material and willful.

WHEREFORE, Plaintiff demands judgment:

i. On her first cause of action against Defendants, in an amount to be determined at trial, plus attorneys' fees and costs;

ii. On her second cause of action against Defendants, in an amount to be determined at trial, plus attorneys' fees and costs;

iii. On her third cause of action against Defendants, in an amount to be determined at trial, plus attorneys' fees and costs;

iv. On her fourth cause of action against Defendants, in an amount to be determined at trial, plus attorneys' fees and costs;

v. On her fifth cause of action against Defendants, in an amount to be determined at trial, plus attorneys' fees and costs;

vi. On her sixth cause of action against Defendants, in an amount to be determined at trial, plus attorneys' fees and costs;

vii. On her seventh cause of action against Defendants, statutory penalties pursuant to 29 U.S.C. § 1132(c)(1) and NYLL 198(1-d) in the amount of $100 per day, or in an amount to be determined at trial, plus attorneys' fees and costs;

viii. Such other and further relief the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff deem a trial by jury on all questions of facts raised by the complaint.

Dated: Melville, New York

    June 9   2021

                                    Pervez & Rehman, P.C

                                    /s/ Nadia M. Pervez
                                  By: Nadia M. Pervez (5388)
                                  Aneeba Rehman (6404)
                                  68 South Service Road, Suite 100
                                  Melville, NY 11747

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CARINA GALLARDO,

                PLAINTIFF,                              Docket No.:

        - against -


IEH CORPORATION, WILLIAM CRAIG &
KARI GRAHAM

                DEFENDANTS,

-------------------------------------------------------------------X


**VERIFICATION**

STATE OF NEW YORK   )
        KINGS     ss.:
COUNTY OF SUFFOLK   )

I, CARINA GALLARDO, am the Plaintiff in the within action. I have read the foregoing Complaint and know the contents thereof. The contents are true to my own knowledge except as to matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

                                                 _____
                                                 CARINA GALLARDO

Sworn to before me on this _5_ day
of _JUNE_, 2021.

_____
      Notary Public

                                       ANDREW G. VARELA
                              Notary Public, State of New York
                                Qualified in Kings County
                                 Reg. No. 24-4524268
                        My Commission Expires Sept. 30, 20_22_