UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARINA GALLARDO,

                Plaintiff,

v.

IEH CORPORATION, KARI GRAHAM, and WILLIAM CRAIG,

                Defendant.

**MEMORANDUM AND ORDER**

21-cv-3257 (LDH)

LaShann DeArcy Hall, United States District Judge:

Carina Gallardo ("Plaintiff") brings this action against IEH Corporation ("IEH"), Kari Graham, and William Craig (together with IEH and Graham, "Defendants"), alleging (i) violations of the Families First Coronavirus Response Act ("FFCRA"), (ii) discrimination and retaliation under the New York State Human Rights Law ("NYSHRL"), (iii) and violations of the notice requirements under the Employee Retirement Income Security Act ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), the New York Insurance Law ("NYIL"), and the New York Labor Law ("NYLL"). Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint in its entirety.

## BACKGROUND[1]

Plaintiff is separated from her husband and effectively a single mother who cares for a minor child. (Compl. ¶ 17, ECF No. 1.) Plaintiff was hired as an accounting clerk at IEH on or

---

[1] The following facts are taken from the complaint and are assumed to be true for the purpose of this memorandum and order.

about June 5, 2017. (*Id.* ¶ 10.) In this position, Plaintiff was responsible for handling, among other things, "items involving the incoming cash for" IEH. (*Id.* ¶ 11.)

On or about October 16, 2020, Plaintiff met with Craig, the Chief Financial Officer of IEH, to discuss the status of an account on which she worked. (*Id*. ¶¶ 6, 12.) During that meeting, Craig discussed the history of the account. (*Id.* ¶ 13.) In August 2020, Craig asked Plaintiff to stop pulling funds from the account, not send the client any of the normal paperwork, and put the account on hold. (*Id.* ¶ 14.) An executive for that client mentioned that IEH owed the client $4 million and asked Craig about the outstanding balance. (*Id.* ¶ 15.) In response, Craig asked the client "to give him a break because another [ ] employee of IEH, also a single mother, was diagnosed with COVID-19 and because he worked with 'single mothers.'" (*Id.* ¶ 16.) Plaintiff reported the comment to the human resources department (HR) on October 20, 2020, because the "single mothers" comment made her feel uncomfortable. (*Id.* ¶ 18.) According to Plaintiff, the comment revealed that Mr. Craig viewed single mothers "as inadequate employees." (*Id.*) Plaintiff's HR complaint went ignored. (*Id.* ¶ 22.)

On or about December 9, 2020, Plaintiff spoke with Graham, the then new "controller" of IEH. (*Id.* ¶ 23.) Graham instructed Plaintiff not to process any incoming payments until Graham could come into the office physically to input them into the system. (*Id.* ¶ 25.) Plaintiff attempted to explain to Graham how to input the incoming payment remotely. (*Id.* ¶ 26.) Graham ignored Plaintiff's concerns that work would pile up and stood on her request for Plaintiff to wait until Graham was physically in the office to enter the payments. (*Id.* ¶¶ 27–28.) Graham also instructed Plaintiff to report directly to her, and she would then report to Craig. (*Id.* ¶ 29.) Graham allegedly threatened Plaintiff at the end of the call, saying Plaintiff "would 'not be around much longer' if she did not understand how 'things work.'" (*Id.* ¶ 31.) Plaintiff

followed up with Graham by email on the same day, asking her to confirm that Plaintiff was not to process any incoming payments until Graham was in the office, that no one had informed Plaintiff that she was not to report to Craig anymore, expressing concern with Graham's tone and perceived threat, and requesting a follow-up meeting. (*Id.* ¶ 33.) Plaintiff also sent an email to HR expressing concern about Graham's "unprofessional" and "inappropriate . . .threat." (*Id.* ¶ 34.)

On December 9, 2020, Plaintiff spoke with Craig about Graham's conduct. (*Id.* ¶ 35.) Craig responded that Plaintiff would have to "put her big boy pants on if she wanted to work at IEH." (*Id.* ¶ 38.) Craig then told Plaintiff that he runs IEH and "if she did not like how someone spoke to her, then she should go to school, get her CPA license, and be her own boss." (*Id.* ¶ 39.) Craig also stated that Plaintiff and another employee, also a single mother, had a "good situation going at IEH" and "this would not be happening if you weren't taking your PTOs." (*Id.* ¶¶ 42–43.) Plaintiff understood these comments to be a threat that required her to either "quietly endure abuse or risk being an unemployed single mother during the pandemic." (*Id.* ¶¶ 45–46.) Plaintiff sent another complaint to HR following her December 9, 2020 meeting with Craig. (*Id.* ¶ 49.)

Following the March 2020 closure of schools due to COVID-19, Plaintiff requested and was approved to work remotely. (*Id.* ¶¶ 50–51.) Craig told her that "someone of [Plaintiff's] title should not be working remotely and should be in the office." (*Id.* ¶ 52.) Ultimately, Plaintiff felt it was necessary to take leave because of Craig's constant negative comments about working remotely. (*Id.* ¶ 53.) On or about December 23, 2020, Plaintiff requested leave under the Family and Medical Leave Act ("FMLA") to care for her child who was not attending school due to the pandemic. (*Id.* ¶ 54.) On or about December 27, 2020, Plaintiff received a letter

3

stating that (1) her FMLA leave was denied because the unavailability of childcare is not covered under the FMLA, (2) she was covered under the FFCRA, (3) she would be required to return to work on March 17, 2021, because her leave commenced on December 23, 2020, (4) but, in the company's discretion, she would actually be scheduled to return on April 1, 2021, and (5) failure to return on April 1, 2021, would be deemed a voluntary resignation. (*Id.* ¶ 55.) On March 17, 2021, Plaintiff emailed HR to confirm she was scheduled to return on April 1, 2021, and to ask whether she would be expected to physically return to the office. (*Id.* ¶ 57.) Plaintiff also inquired about her complaints of harassment, intimidation, and hostility. (*Id.*)

On March 29, 2021, Plaintiff received a letter from IEH stating that her position had been eliminated because her role could be performed on an automated basis and otherwise internally within IEH. (*Id.* ¶ 58.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant's liability for the alleged misconduct. *Id*. While this standard requires more than a "sheer possibility" of a defendant's liability, *id.*, "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999). Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id.* (citations omitted).

4

# DISCUSSION

## I. FFCRA

On March 18, 2020, Congress passed FFCRA in response to the COVID-19 pandemic. *See* Pub. L. No. 116-127 (Mar. 18, 2020) ("FFCRA"). Of particular relevance here, the Emergency Family and Medical Leave Expansion Act ("EFMLEA") temporarily amended the FMLA to expand its applicability to certain employees for up to 12 weeks of paid leave per year "because of a qualifying need related to a public emergency." 28 U.S.C. § 2612(a)(1)(F). The term "qualifying need related to a public emergency" refers to when "the employee is unable to work (or telework) due to a need for leave to care for the son or daughter under 18 years of age of such employee if the school or place of care has been closed, . . . due to a public emergency." 29 U.S.C. § 2620(a)(2)(A). In making a request for such leave under the EFMLEA, an employee must provide the following documentation to her employer:

> (1) the name of the son or daughter being cared for; (2) the name of the school, place of care, or child care provider that has closed or become unavailable; and (3) a representation that no other suitable person will be caring for the son or daughter during the period for which the employee takes paid sick leave or expanded family and medical leave.

Paid Leave Under the Families First Coronavirus Response Act, 85 FR 19326-01.

### A. Pleading Requirement

Defendants argue the FFCRA claims should be dismissed because Plaintiff failed to allege that she provided Defendants the information necessary to approve her leave request. (Defs.' Mem. at 10, ECF No. 20.) Defendant misapprehends a documentation requirement under the statute with a pleading standard to state a claim for relief.

Plaintiff alleges that she originally sought FMLA leave to care for her child who could not attend school due to COVID-19. (Compl. ¶ 54.) Plaintiff further alleges that she needed to

5

take leave under the FFCRA because childcare was not available through her child's school or childcare provider. (*Id.* ¶ 79). In response, Defendants informed her she was covered by the FFCRA and approved her leave under the FFCRA. (*Id.* ¶ 55.) At this stage, Plaintiff has at least plausibly alleged that she was entitled to leave under the FFCRA.[2] Whatever dispute Defendant has with respect to the documentation Plaintiff provided when requesting leave is an issue that will certainly be tested through the course of discovery and perhaps even through a motion for summary judgment—not on a motion to dismiss.[3] Defendant's motion to dismiss is denied on this ground.

### B. Job Restoration

Defendants argue that claims under FFCRA should be dismissed because the law does not provide job restoration rights. (Def.'s Mem. at 11.) Defendants are wrong. Plaintiff correctly points out that she took leave under the EFMLEA, not the Emergency Paid Sick Leave Act ("EPSLA").[4] The EFMLEA temporarily expanded the FMLA to cover leave resulting from

---

[2] The cases Defendants cite are not persuasive. *Toro v. Acme Barricades, L.C.*, No. 20-cv-1867, 2021 WL 3207632 (M.D. Fla. April 9, 2021), for example, is a report and recommendation. Moreover, in that case, the employee failed to give her employer notice that she was requesting leave under the relevant statute. *Id.* at *5. That is not the case here, where Plaintiff alleges she was requesting leave under the FMLA because of COVID-19 related school closures. Further, in *Colombe v. SGN, Inc.*, No. 20-cv-374, 2021 WL 1198304 (E.D. Ky. Mar. 29, 2021), the parties disputed whether the plaintiff was entitled to leave at all. *Id.* at *4. That is not the case here, where Plaintiff has plausibly alleged she qualified for leave.

[3] To persuade the Court that Plaintiff must allege she gave Defendants all the necessary information in order to survive a motion to dismiss, Defendants primarily rely on *Figueroa Collazo v. Ferrovial Construccion PR, LLC*, No. 20-cv-1612, 2021 WL 4482268 (D.P.R. Sept. 30, 2021). That case, however, is inapposite. There, the court was not answering the question of whether the plaintiff provided sufficient information to the employer when requesting leave. *Id.* at *6. Instead, the court dismissed the FFCRA claim because plaintiff had not alleged facts sufficient to qualify for leave. *Id.* In *Collazo*, the plaintiff requested a hybrid accommodation so she could split her time working remotely and working in person. *Id.* at *7. The FFCRA regulations make clear, however, that leave is not available if an employee is able to work, even if remotely. 29 C.F.R. § 826.100(a)(4). Thus, the court found that the plaintiff did not qualify for leave under the statute. That is not the case here.

[4] The Emergency Paid Sick Leave Act ("EPSLA") provides, in part, that employers must offer sick leave and emergency family leave to employees who are unable to work because of the pandemic. *Id.* Specifically, § 5102 provides in its pertinent part that, "[an] employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because . . . [t]he employee is caring for a son or daughter of such employee if the school or place of care of the son or daughter has

6

COVID-19 related events. Thus, the provisions of the FMLA apply with equal force to the EFMLEA. *See Figueroa Collazo v. Ferrovial Construcción PR, LLC*, No. 20-cv-1612, 2021 WL 4482268, *5 (D.P.R. Sept. 30, 2021) (appeal pending) (acts prohibited by the FMLA are "equally prohibited as to the EFMLEA"). The FMLA requires that an employee "be restored by the employer to the position of employment held by the employee when the leave commenced" or "be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C.A. § 2614. And, this requirement extends to the EFMLEA. Defendants' motion to dismiss is denied on this ground.

### C. EFMLEA Retaliation

Defendants argue that, in order to succeed under her EFMLEA retaliation claim, Plaintiff was required to file a complaint, "institute a proceeding," "testify in [] such a proceeding," or cause such a proceeding to be initiated. (Defs.' Mem. at 13.) As a starting point, the Court notes that Defendant cites to the EPSLA for this requirement. Plaintiff's retaliation claim falls under the EFMLEA and not the EPSLA. The EFMLEA does not have similar language.

In any event, Defendants acknowledge that the EFMLEA "reli[s] upon enforcement provisions in the FMLA." (Defs.' Mem. at 13.) "To establish a prima faci[e] case of FMLA retaliation, a plaintiff must establish that 1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for his position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of

---

been closed, or the child care provider of such son or daughter is unavailable, due to COVID-19 precautions." FFCRA § 5102(a)(5). However, "[a]n Employee may not take Paid Sick Leave to care for his or her Son or Daughter unless, but for a need to care for an individual, the Employee would be able to perform work for his or her Employer, either at the Employee's normal workplace or by Telework." 29 C.F.R. § 826.20(a)(9). The EPSLA further specifies a list of prohibited acts. Namely, it is unlawful "for an[ ] employer to discharge, discipline, or in any other manner discriminate against any employee who—(1) takes leave in accordance with this Act; and (2) has filed any complaint or instituted or caused to be instituted any proceedings under or related to this Act . . ." FFCRA § 5104.

7

retaliatory intent." *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (citation omitted); *see also Jarry v. ECC Corp.*, 581 F. Supp. 3d 376, 381 (D.R.I. 2022) (analyzing EFMLEA retaliation claim under same standard as FMLA claims).[5]  Here, Plaintiff has alleged that she exercised rights protected under the FMLA.  (Compl. ¶ 54.)  And, Defendants do not dispute that Plaintiff was qualified for the position.  Moreover, Plaintiff alleges she was terminated from her position while she was on leave.  (*Id.* ¶ 58).  She has plainly stated a claim for retaliation under the EFMLEA.  *See, e.g.*, *Barber v. Von Roll U.S.A., Inc.*, No. 1:14-CV-907, 2015 WL 5023624, at *11 (N.D.N.Y. Aug. 25, 2015) (denying motion to dismiss FMLA retaliation claim where plaintiff terminated after requesting leave); *Kofler v. Sayde Steeves Cleaning Serv., Inc.*, 8:20-CV-1460-T-33AEP, 2020 WL 5016902, at *3 (M.D. Fla. Aug. 25, 2020 ("The alleged temporal proximity between Kofler's leave request and termination — a mere seven days — is sufficient to state a claim for retaliation [under the EFMLEA].").[6]  Defendants' motion is denied on this ground.

## II. NYSHRL[7]

### A. Discrimination

Plaintiff brings claims for sex, familial status, and marital status discrimination under the NYSHRL.  Specifically, Plaintiff alleges she was treated "less well" because she was a single unmarried mother.  (Compl. ¶¶ 93, 98, 104.)

---

[5] The Court notes that there is a dearth of case law applying the EFMLEA.  However, because the statute is an extension of the FMLA, the Court finds FMLA case law instructive.

[6] Defendants' sole case cited for this proposition addresses only the EPSLA, not the EFMLEA, and is thus inapposite.  *See Piotrowski v. Signature Collision Centers, LLC*, No. 2:21-CV-02115-JDW, 2021 WL 4709721, at *4 (E.D. Pa. Oct. 8, 2021).

[7] Claims for discrimination and retaliation under the NYSHRL are analyzed under the same framework as Title VII violations.  *See Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 n.2 (2d Cir. 2013).

To establish a claim of discrimination under the NYSHRL, a plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and, (4) the adverse employment action occurred under circumstances giving rise to an inference that the employer acted with discriminatory intent. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015); *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11 (2d Cir. 2013) (summary order). At the motion to dismiss stage, a plaintiff need not allege facts that satisfy every element. Rather, a plaintiff need only plead facts plausibly alleging that the employer took an adverse action against her at least, in part, for a discriminatory reason. *See Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (summary order) ("To survive a motion to dismiss, a [ ] plaintiff does not have to plead a full prima facie case pursuant to the first stage of the burden-shifting framework outlined in [*McDonnell Douglas Corp.*]; she 'need only give plausible support to a minimal inference of discriminatory motivation.'" (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015)).

Defendants do not appear to dispute that Plaintiff belonged to a protected class and that she was qualified for the position that she held. Defendants do, however, challenge whether Plaintiff alleged an adverse employment action resulting from alleged discrimination. With respect to the third element, the only adverse employment action Plaintiff has alleged is her termination on March 29, 2021. (Compl. ¶ 58.) This plainly qualifies, and Defendants do not suggest otherwise. *See, e.g.*, *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 212 (2d Cir. 2010) (citation omitted) (listing termination as an example of an adverse employment

9

action).[8]  The Court's inquiry thus focuses on whether Plaintiff has alleged circumstances giving rise to an inference of discriminatory motivation for her termination.  She has not.

At the pleading stage, a plaintiff may prove discriminatory motive either directly, by alleging facts that show an intent to discriminate, or indirectly, by alleging circumstances that give rise to a plausible inference of discrimination.  *See Vega*, 801 F.3d at 87 (stating standard for proving an adverse employment decision was motivated, at least in part, by an impermissible reason).

Plaintiff alleges three alleged incidents she claims establish a discriminatory motive.  *First*, Craig asked his client to give him a break because he works with "single mothers." (Compl. ¶ 16.)  *Second,* in a call on or around December 9, 2020, Graham told Plaintiff she no longer reported to Craig but instead to Graham.  (*Id.* ¶¶ 25, 29, 31).  And, in the same call, Graham instructed Plaintiff not to process incoming payments until Graham was in the office. (*Id.*)  At the end of this call, Graham told Plaintiff she would "not be around much longer" if she did not understand how "things work[ed]."  (*Id.* ¶¶ 25, 29, 31.)  *Third*, Plaintiff expressed her concern regarding Graham's behavior to Craig the same day.  (*Id.* ¶ 35.)  In response to Plaintiff's concerns about Graham, Craig told Plaintiff to "put her big boy pants on" and said "this would not be happening if you weren't taking your PTOs."  (*Id.* ¶¶ 38, 43.)  During this conversation, Graham commented that Plaintiff and another employee, who is also a single mother, "had been allowed to do whatever they wanted and that they had a good situation going at [the company]."  (*Id.* ¶ 42.)

---

[8] While Plaintiff makes no argument to the Court suggesting as much, Plaintiff alleges that Graham required Plaintiff to report to her, rather than to Craig, and made Plaintiff wait until Graham was in the office to process payments.  (*Id.* ¶¶ 25, 29, 31).  This conduct does not rise to the level of "a materially adverse change in the terms and conditions of employment," but is more appropriately characterized as non-actionable workplace grievances. *See La Grande v. DeCrescente Distrib. Co*., 370 F. App'x 206, 211 (2d Cir. 2010) ("Everyday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII.") (citations omitted).

With respect to the comments made by Graham, Plaintiff alleges no facts suggesting that these comments were directed at Plaintiff as a single mother. Indeed, as alleged, the facts suggest that Graham and Plaintiff had a dispute over whether work had to be done in the office or remotely. (*Id.* ¶¶ 25, 29, 31.) Similarly, the comments attributable to Craig suggest at most an issue with Plaintiff working remotely or taking time off. The single, one-off comment to his client regarding working with single mothers is no more than a "stray remark" that—without more—cannot give rise to an inference of discrimination. *See, e.g.*, *Lebowitz v. New York City Dep't of Educ.*, No. 15-CV-2890, 2017 WL 1232472, at *10 (E.D.N.Y. Mar. 31, 2017) (granting motion to dismiss Title VII claim where the plaintiff alleged school administrators made several derogatory comments about the plaintiff's national origin because "[s]uch stray remarks, . . . even if made by a decisionmaker, without more, cannot get a discrimination suit to a jury." (citation and quotation marks omitted)); *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) ("Isolated comments, while potentially offensive, do not lead to an inference of discriminatory intent").[9] Defendants' motion to dismiss Plaintiff's discrimination claim under NYSHRL is granted.

### B. Retaliation

"To make out a prima facie case of retaliation, a plaintiff must make four showings: that (1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists

---

[9] Plaintiff does not argue that she can establish discriminatory motive indirectly. Nor could she. To allege a discriminatory motive indirectly, a plaintiff raises a prima facie inference of discrimination when she demonstrates that his employer treated her less favorably than similarly situated employees outside of her protected class. *See Palmer v. Shchegol*, 406 F. Supp. 3d 224, 232 (E.D.N.Y. 2016) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)). To do so, a plaintiff must establish that she was "similarly situated in all material respects to the individuals with whom she seeks to compare [him]self." *Id.* (quoting *Mandell v. Conty. of Suffolk & John Gallagher*, 316 F.3d 368, 379 (2d Cir. 2003)). At most, Plaintiff alleges "many of [her] coworkers worked remotely or would work hybrid schedules." (Compl. ¶ 44.) She does not that these individuals were outside her protected class or that they were similarly situated in all material respects.

11

between the alleged adverse action and the protected activity." *Summa v. Hofstra U.*, 708 F.3d 115, 125 (2d Cir. 2013).

Plaintiff argues that the complaint she made to HR in December 2020 constitutes protected activity. She is wrong. To allege a "protected activity" under Title VII, Plaintiff need only "'have had a good faith, reasonable belief that [s]he was opposing an employment practice made unlawful by Title VII [or here, the NYSHRL]." *Kessler v. Westchester Cnty. Dep't of Soc. Services.*, 461 F.3d 199, 210 (2d Cir. 2006). In the December 2020 email to HR, Plaintiff relayed the phone call with Graham, expressed that the way Graham spoke to her was "unprofessional and inappropriate," and made requests that Graham not contact her cell phone. (Compl. ¶ 34.) She alleges no facts suggesting that she was reporting a violation of the NYSHRL. Put simply, this is not a protected activity. *See Roth v. Farmingdale Pub. Sch. Dist.*, No. 14-CV-6668, 2016 WL 767986, at *9 (E.D.N.Y. Feb. 26, 2016) (no retaliation claim where Plaintiff alleged only that he "advocated for better security and surveillance systems, solar panels, and energy efficient stage lighting to be installed" because "[s]uch actions do not constitute protected activity under Title VII"). Plaintiff's argument with respect to the complaint she made to HR regarding Craig's comment about single mothers fares better. (Compl. ¶ 18.) Filing an internal complaint about perceived discrimination is sufficient to allege a protected activity. *See, e.g.*, *Muktadir v. Bevacco Inc.*, No. 12-CV-2184 FB RER, 2013 WL 4095411, at *3 (E.D.N.Y. Aug. 13, 2013) (filing internal complaints reporting name calling constitutes protected activity).

Plaintiff, however, fails to allege a causal connection between the October 20, 2020 complaint and her March 29, 2021 termination. Where a plaintiff fails to plead a direct link between a grievance and retaliatory action, the plaintiff can demonstrate a causal connection

12

"indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Littlejohn*, 795 F.3d at 319. Plaintiff has not alleged facts sufficient to state a discriminatory intent.

Plaintiff includes only a conclusory allegation that she was terminated "in retaliation for her good-faith complaints of discrimination and harassment." (Compl. ¶ 61.) But, she alleges no facts supporting this conclusion. Given the five-months that passed between her complaint and termination and the absence of any other facts suggesting she was terminated because of the complaint, her retaliation claim cannot survive. *See, e.g.*, *Dechberry v. New York City Fire Dept.*, 124 F. Supp. 3d 131, 155 (E.D.N.Y. 2015) (dismissing retaliation claim because the causal connection was too "attenuated" where alleged complaint and retaliation occurred six months apart); *see also Haynes v. Capital One Bank*, No. 14–CV–6551, 2015 WL 2213726, at *2 (E.D.N.Y. May 8, 2015) (dismissing plaintiff's retaliation claim because, aside from alleging single "ambiguous remark made by [plaintiff's] branch manager, in which [the manager] stated that 'this is why I don't hire her kind,'" plaintiff failed to allege "facts that suggest her termination or any other adverse employment actions were connected to her race").[10] Defendants' motion to dismiss Plaintiff's retaliation claim is granted.

### III.     ERISA, COBRA, NYLL, and NY Insurance Law

"COBRA provides that employers must allow former employees to continue health care coverage under the employer's plan if a qualifying event occurs." *Goodman v. Commercial*

---

[10] *See also Marquez v. Starrett City Assocs.*, 406 F. Supp. 3d 197, 210 (E.D.N.Y. 2017) (dismissing complaint for failing to allege a causal connection between internal and EEOC complaints and alleged retaliation); *Anderson v. Davis Polk & Wardwell LLP*, 850 F.Supp.2d 392, 413 (S.D.N.Y.2012) (dismissing retaliation claims where there was "nothing to connect [plaintiff's] complaint . . . and the self-described retaliatory actions aside from the fact that plaintiff groups these actions underneath the heading of 'retaliation' in his [pleadings]").

*Labor Servs., Inc.*, No. 98-CV-1816, 2000 WL 151997, at *2 (N.D.N.Y. Feb. 11, 2000) (citing 29 U.S.C. § 1161). Under ERISA, as amended by COBRA, the employer must notify the employee of her right to continue coverage when a qualifying event occurs. *See* 29 U.S.C. § 1166(a)(4)(A). Termination of employment is a qualifying event. *Id.* at § 1161(a)(1). Plaintiff alleges that Defendants failed to "apprise [her] of her right to elect continuation of health benefits upon her termination." (Compl. ¶ 72.) The NYLL and NYL contain corollaries to ERISA's notice requirement. *See* N.Y. Lab. Law. § 195(6); N.Y. Ins. Law § 3221(m).

Among other arguments, Defendants maintain that Plaintiff's claim under ERISA, COBRA, the NYLL, and the NYIL must be dismissed for lack of standing. (Defs.' Mem. at 22–23.) The Court agrees.

Article III of the Constitution provides federal courts with jurisdiction over cases or controversies, which means a plaintiff must "have a personal stake in the case—in other words, standing." *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 74 (2d Cir. 2022) (quoting *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021)). "To establish standing, a plaintiff must show (i) that [s]he suffered injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* In the context of statutory violations, as Plaintiff alleges here, the Supreme Court "has rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize the person to sue to vindicate that right.'" *TransUnion LLC*, 141 S. Ct. at 2205. Here, Plaintiff does not allege that she did not continue her health coverage; she pleads only a statutory violation of the notice requirement. That is insufficient.

14

In opposition, Plaintiff states that Defendants have not provided her "documentation" regarding whether she was actually provided notice of her continued coverage. (Pl.'s Opp'n at 23, ECF No. 22.) That is neither here nor there as the relevant inquiry for the Court is whether Plaintiff has alleged an injury in fact on the face of the complaint. And, she has not. Defendant's motion to dismiss Plaintiff's claims under the ERISA, COBRA, NYLL, and NYIL is granted.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Specifically, Defendants' motion to dismiss is DENIED with respect to Plaintiff's claims under FFCRA, and GRANTED with respect to Plaintiff's claims under the NYSHRL, ERISA, COBRA, NYLL, and NYIL.

SO ORDERED.

Dated: Brooklyn, New York  
      September 30, 2022

/s/ LDH  
LaSHANN DeARCY HALL  
United States District Judge